23UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOUNT VERNON FIRE INSURANCE COMPANY, | ) ) | |
| | ) | Case No. 22-cv-03816 |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Sharon Johnson Coleman |
| JANE CHILD CARE INC. d/b/a JANE'S CHILD CARE, JANE KORZUN a/k/a YIVGENIA KORZUN, GALYNA ZAYTSEVA, ALISON FLEISCHAUER and JOSEPH FLEISCHAUER, as parents and next friends of TESSA FLEISCHAUER, a minor, CARLY FLEISCHAUER, a minor, and MADISON FLEISCHAUER, a minor, MARK HERRMANN and MARISSA HERRMANN, as parents and next friends of MASON HERRMANN, a minor, and AILEEN LEVINE and RANDY LEVINE, as parents and next friends of NAYELLIE LEVINE, a minor, and ELIJAH LEVINE, a minor, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This declaratory judgment action asks the Court to determine which obligations, if any, plaintiff Mount Vernon Fire Insurance Company ("Mount Vernon") owes insured defendants Jane Child Care Inc. d/b/a Jane's Child Care ("Jane's Child Care") and its employees Jane Korzun a/k/a Yivgenia Korzun ("Korzun") and Galyna Zaytseva. Defendants Alison Fleischauer and Joseph Fleischauer, as parents and next friends of Tessa Fleischauer, a minor, Carly Fleischauer, a minor, and Madison Fleischauer, a minor, Mark Herrmann and Marissa Herrmann, as parents and next friends of Mason Herrmann, a minor, and Aileen Levine and Randy Levine, as parents and next friends of Nayellie Levine, a minor, and Elijah Levine, a minor, are the plaintiffs in underlying state court lawsuits against defendants Jane's Child Care, Korzun, and Zaytseva. All parties in the underlying cases (collectively, "defendants") maintain that Mount Vernon has a duty to defend

1

Jane's Child Care, Korzun, and Zaytseva pursuant to several provisions of Jane's Child Care's insurance policy with Mount Vernon (the "Policy").

After filing its declaratory judgment complaint, Mount Vernon filed its motion for summary judgment, maintaining that its insurance obligations to Jane's Child Care are limited to a duty to defend Jane's Child Care under one Policy provision—Coverage M—which covers "Child Molestation or Abuse" and is subject to a $25,000 sublimit. Defendants argue that Mount Vernon's obligations are much broader, and that Mount Vernon also has a duty to defend Jane's Child Care, Korzun, and Zaytseva under Coverage A, B, and P of the Policy. In addition, defendants filed their own motion for summary judgment, asking this Court to find that the $25,000 sublimit is contrary to Illinois law and thus unenforceable. For the following reasons, this Court grants in part and denies in part Mount Vernon's motion for summary judgment [5] and denies defendants' motion for summary judgment [54].

**Background[1]**

This case stems from a tragedy. In 2019, Jaspen W. Lothson died while at Jane's Child Care. As a result of Lothson's death, the Round Lake Illinois Police Department conducted an investigation of Jane's Child Care. The estate of Jaspen Lothson filed a wrongful death action in state court against Jane's Child Care, Korzun, and Zaytseva. Subsequently, the Fleischauer Defendants, Herrmann Defendants, and Levine Defendants, each of whom had enrolled their children at Jane's Child Care, filed individual state court lawsuits against Jane's Child Care, Korzun, and Zaytseva, which were consolidated into a single action with the Lothson matter. The Lothson matter settled, but the lawsuits remain pending between the other parties.

---

[1] The parties dispute how to characterize the underlying lawsuits and several of the following facts, and argue that various facts should be stricken. As discussed below, this case primarily requires this Court to compare the parties' insurance policy to the allegations in the underlying lawsuits, and these documents have been provided to the Court. The Court thus incorporates these documents, as well as undisputed facts provided in the parties' statements of material fact and information discussed in their briefs, into the below summary.

The substance of the underlying lawsuits is hotly contested: Mount Vernon maintains that the disputes are solely premised on allegations of child abuse, whereas defendants assert that the lawsuits are more far-reaching, encompassing negligence claims as well. The three complaints contain similar allegations: the Fleischauer, Levine, and Herrmann defendants allege that Jane's Child Care, Korzun, and Zaytseva physically, mentally, and emotionally abused their children while in the day care's care, custody, and control. They further allege that Jane's Child Care, Korzun, and Zaytseva breached their duty to exercise ordinary care and were negligent in failing to properly care for the children, to regularly change their diapers, to ensure their safety and wellbeing, or to provide them with adequate food, as well as negligent in physically striking, physically restraining, and unreasonably restraining the children. Mount Vernon filed its declaratory judgment action to obtain Court determination on the scope of coverage for these claims.

The Policy covers the relevant policy period: April 16, 2019 to April 16, 2020. In its application for insurance, Jane's Child Care informed Mount Vernon that its service is a "child care run from insured's single family home." Mount Vernon maintains that Jane's Child Care was licensed as a Group Day Care Home, but defendants dispute the accuracy of this license. The parties contest the application of the following Policy provisions:

Coverage A: Coverage A covers damages because of "bodily injury," defined as "(a) bodily injury; (b) sickness; (c) disease; or (d) mental anguish or emotional distress" arising out of the above. (Dkt. 1-1, 7, 47.) A Molestation or Abuse Exclusion applies, which excludes coverage for "[a]ny injury sustained by any person arising out of or resulting from alleged, threatened, or actual abuse or molestation by" any insured or its employee. (*Id.* at 48.) Mount Vernon "shall not have any duty to defend any 'suit' against any insured seeking damages on account of any such injury." (*Id.*)

Coverage B: This provision covers Personal and Advertising Injury liability, which protects the insured from damages because of "injury, including consequential 'bodily injury', arising out of … [f]alse arrest, detention, or imprisonment." (*Id.* at 12, 20.)

Coverage M: Coverage M covers "child molestation or abuse," which is defined as "sexual or physical injury or abuse of any child, including assault and battery and/or improper touching." (*Id.* at 41.) The provision also provides that multiple acts of "child molestation or abuse" committed by more than one person acting in concert is deemed one occurrence of "child molestation or abuse." (*Id.* at 39.) This Coverage also makes clear that Coverage M is not afforded to any person who committed or is alleged to have committed "child molestation or abuse." (*Id.*) Coverage M has a limit of insurance for each claim arising out of any one occurrence of child molestation or abuse of $25,000 and an aggregate limit of $50,000. (*Id.* at 4.)

Coverage P: The Policy also contains Professional Liability Coverage, which provides coverage for "sums that the insured becomes legally obligated to pay as damages because of liability arising out of any negligent act, error or omission in rendering or failure to render professional services of the type described . . . in the Business Description" of the Policy. (*Id.* at 34.) The Business Description of the Policy in this case is "Child Care—Residential." (*Id.* at 2.) Coverage P has its own molestation and abuse exclusion similar to Coverage A. (*Id.* at 35.)

Miscellaneous Policy Terms: The Policy contains an amendment mandating that the insured "comply at all times with all state or local statutes, regulations, rules, guidelines, or directives applicable to your childcare operations." (*Id.* at 51.) In addition, the Policy provides for a limit of insurance for each occurrence of $1,000,000 with an aggregate limit of $2,000,000. (*Id.* at 4.)

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.

Ct. 2505, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material

fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the

nonmoving party. *Id.* at 255; *Lovelace v. Gibson*, 21 F.4th 481, 483 (7th Cir. 2021). After "a properly

supported motion for summary judgment is made, the adverse party 'must set forth specific facts

showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (citation omitted).

Courts review an insurance policy like they review a contract. The parties agree that Illinois

rules of contract interpretation apply to this case. Courts seek to determine the parties' intention as

expressed through the policy. *See, e.g., Erie Ins. Exch. v. Triana*, 398 Ill. App. 3d 365, 368, 923 N.E.2d

861, 864 (1st Dist. 2010). If a policy provision is unambiguous, the terms are "given their plain and

ordinary meaning." *Id.* On the other hand, if the provision is "susceptible to more than one

reasonable interpretation," it is considered ambiguous and the ambiguity is construed against the

insurer. *Id.*

**Discussion**

The parties' briefing centers upon whether Mount Vernon has a duty to defend Jane's Child

Care, Korzun, and Zaytseva under Coverage A, B, M, and P. To determine whether an insurer

possesses a duty to defend the insured, courts compare the allegations of the complaint in the

underlying action to the language of the insurance policy. *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3

F.4th 322, 327 (7th Cir. 2021) (citing *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307,

314 (7th Cir. 2020)). If the complaint in the underlying action alleges facts that potentially fall within

the policy's coverage, the insurer must defend the insured, where "[a]ny doubts about the duty to

defend are resolved in favor of the insured." *Id.* Furthermore, where "an insurer relies on a

5

provision that it contends excludes coverage, courts review the applicability of the provision to ensure it is clear and free from doubt that the policy's exclusion prevents coverage." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020) (internal quotation marks omitted). The insurer bears the burden of proving the exclusion applies because the insurer could have drafted the ambiguous exclusion with more specificity, avoiding disputes. *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 721 (7th Cir. 2015). In addition, if an insurer has filed a declaratory action to seek a judgment that no coverage exists for the underlying claim, the insurer "is entitled to introduce evidence outside the underlying complaint so long as it does not implicate an 'ultimate issue' in the underlying action." *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 826 (7th Cir. 2016).

The Court considers each Policy dispute in turn, before assessing whether the Child Molestation or Abuse sublimit is valid under Illinois law.

Coverage M

Mount Vernon contends it has *only* one coverage obligation: a duty to defend Jane's Child Care (and not Korzun or Zaytseva) under Coverage M, the Policy's Child Molestation or Abuse provision. It argues the underlying lawsuits center upon allegations of physical, emotional, and mental abuse, including allegations of physically striking and restraining children. Thus, it claims that Coverage M—and only Coverage M—applies to the suit. Defendants do not dispute that Coverage M would apply to some of the claims, but emphasize that the underlying complaint also encompasses negligence claims, such as failing to properly care for children and failing to regularly change diapers, that fall outside the scope of Coverage M.

According to Mount Vernon, this Court must be skeptical of defendants' argument, for they have an incentive to frame their case to maximize insurance coverage. It is important for this Court to look beyond the "legal label[s]" of this lawsuit to determine whether the suit falls within the scope of the Policy. *Farmers Auto. Ins. Ass'n v. Danner*, 967 N.E.2d 836, 844, 359 Ill. Dec. 806, 814 (4th

6

Dist. 2012) (internal citation omitted). But this case is distinguishable from cases cited by Mount

Vernon, like *Allstate Ins. Co. v. Carioto*, 194 Ill. App. 3d 767, 551 N.E.2d 382 (1st Dist. 1990), where

the allegations clearly implicated intentional acts (in *Carioto*, attempted murder) but were cast as

"facetious" negligence claims. *Id.* at 775; *see also Danner*, 967 N.E.2d at 844–45 (finding no duty to

defend a supposed "negligence" claim where defendant had driven his truck into plaintiff and later

struck him with a golf club). The Court sees, and is very concerned by, the allegations in the

complaint. Nevertheless, some allegations, such as failure to change diapers and failure to provide

ordinary care, do not clearly fall within the definition of abuse as set forth in Coverage M. Indeed,

> it should be the rare case that we are so confident that the allegations could not
> possibly be considered to describe negligent conduct, and can only be credibly
> characterized as intentional conduct, that we can say that the allegations in an
> underlying complaint could not even *potentially* fall within the coverage of a policy.

*Country Mut. Ins. Co. v. Dahms*, 58 N.E.3d 118, 129, 405 Ill. Dec. 311, 322 (1st Dist. 2016) (internal

citations omitted and emphasis in original). This is not one of those rare cases.

Mount Vernon further argues that Coverage M contains an exclusion precluding coverage

for Korzun and Zaytseva, who are alleged to have committed actual or alleged child abuse.

Defendants respond that the Court should not apply this exclusion, because it is ambiguous and not

clear and free from doubt that the exclusion applies. The Court does not agree that the exclusion is

ambiguous. To the extent Coverage M applies to claims of abuse perpetrated by Korzun or

Zaytseva, the exclusion would apply. Thus, the Court narrowly grants summary judgment to

Mount Vernon on the following: to the extent that Coverage M applies to the underlying allegations,

Mount Vernon has a duty to defend Jane's Child Care and not Korzun or Zaytseva.

Coverage A

Mount Vernon argues it has no duty to defend Jane's Child Care, Korzun, or Zaytseva in the

underlying lawsuits under Coverage A because the conduct is excluded from coverage under the

Policy's "Molestation or Abuse" exclusion. The exclusion establishes that Mount Vernon does not

7

have any duty to defend against suits seeking damages for bodily injury resulting from injuries arising out of abuse. Defendants argue that since the allegations also concern negligent acts that resulted in bodily injury, including failure to regularly change children's diapers resulting in harm, failing to provide adequate food, or failing to ensure the children's safety, Mount Vernon has a duty to defend under Coverage A.

In its reply, Mount Vernon does an about face. Although Mount Vernon, too, discussed the importance of comparing the complaint's allegations to the insurance policy in its opening brief, Mount Vernon takes time in its reply to critique defendants' adoption of the same approach, maintaining that the Court should *also* consider extrinsic evidence to determine if a duty to defend arises. Mount Vernon is correct that courts can look to extrinsic evidence to determine whether there is a duty to defend, so long as doing so would not decide an issue in the underlying action.

Mount Vernon points to the Korzun and Zaytseva's criminal charges and the Illinois Department of Children and Family Service's ("DCFS") evidentiary findings of abuse and neglect. It also points to Zaytseva's guilty plea where she had to register on the Illinois Murderer and Violent Offender Against Youth Registry, and her stipulation that she and Korzun left a child in a car seat alone in a room for eight hours. Mount Vernon claims this evidence clearly demonstrates that the alleged conduct is criminal, let alone *intentional*, such that all claims in the complaint arise out of allegations of abuse and fall within the exclusion.[2]

These findings are disturbing, and nothing in this ruling should be read to minimize the severity of the complaint's allegations. But this Court's duty is to determine whether there is a duty to defend under the Policy, and the Court does not find that this extrinsic evidence changes its conclusion. As discussed above, the Court finds that the complaints' allegations, such as leaving a

---

[2] By raising these points in their reply brief, Mount Vernon stopped defendants from having the opportunity to discuss their position on this extrinsic evidence and whether it is appropriate for the Court to consider. Nevertheless, the Court does not find that this evidence tilts the scales here.

child in a car seat or failing to change a diaper, can plausibly be considered negligence, even if this extrinsic evidence is considered. Thus, this Court finds that the allegations fall within the scope of Coverage A.

Regarding the exclusion, for it to be inapplicable, the alleged events must be independent: as one court put it, allegations regarding "the negligent supervision of the children must stand on [their] own." *Starr Indem. & Liab. Co. v. Boys and Girls Club of Carbondale*, No. 11-cv-0858-MJR-PMF, 2012 WL 5843159, at *6 (S.D. Ill. Nov. 19, 2012). Here, negligence, and injuries resulting from negligent acts, are plausibly alleged in the alternative and stand on their own from allegations regarding abuse. Thus, the exclusion does not clearly apply.[3] This, alongside the principle that courts must read policies liberally to see if claims *potentially* fall within the scope of coverage, leads this Court to conclude that Mount Vernon has a duty to defend Jane's Child Care, Korzun, and Zaytseva under Coverage A. Thus, the Court denies Mount Vernon's motion for summary judgment on this basis.[4]

Coverage B

In their response brief, defendants also argue that Mount Vernon owes them a duty to defend under Coverage B. They maintain that their allegations of unreasonable restraint could potentially fall within the scope of this provision, which encompasses "false arrest, detention or imprisonment." Defendants point out that the Policy does not specifically define any of these terms, such that there is ambiguity as to their meaning. Thus, defendants argue the provision should be interpreted in favor of coverage. Mount Vernon critiques what they deem to be "fractured

---

[3] Mount Vernon points to purported videos evincing abusive conduct, which defendants argue is unsupported by the record. The Court does not consider this point further.

[4] The Court notes that the duty to defend may end if, at any time, the issues are determined to be outside the scope of the provision. *See Sears, Roebuck and Co. v. Reliance Ins. Co.*, 654 F.2d 494, 497 (7th Cir. 1982) ("[T]he carrier's duty continues until such time, if ever, as the claim might be confined to non-covered allegations."). At this time, the Court finds Mount Vernon has a duty to defend as discussed in this Opinion.

logic," arguing that defendants cannot say that their suit encompasses negligence claims *and* intentional torts, like false imprisonment, in the same breath. *See Campbell v. Kaczmarek*, 39 Ill. App. 3d 465, 469, 350 N.E.2d 97, 101 (1st Dist. 1976) ("In order to constitute false imprisonment, there must be an actual or legal intent to restrain."). Mount Vernon thus maintains that finding a duty to defend under Coverage B leads to an absurd result.

Again, this Court must determine whether the allegations could *potentially* fall within the scope of coverage. The Court disagrees with Mount Vernon that it would be "fractured logic" to find that Coverage B applies. Just because some allegations implicate negligence does not mean others could not potentially fall within the scope of Coverage B. The complaint includes allegations where Zaytseva and Korzun restrained children. Although the Court finds these allegations alarming and does not condone this conduct, the Court cannot definitively conclude that this conduct falls within Coverage M, as Mount Vernon argues, and not Coverage B, which covers false imprisonment. The Court denies Mount Vernon's summary judgment motion on this basis, too.

Coverage P

Finally, defendants contend that the alleged conduct falls within the scope of Coverage P, which provides insurance coverage for damages associated with "professional services." Mount Vernon argues that the at-issue conduct—deficient care—is not a "professional service" as envisioned by the policy, because providing an "abuse-free" environment does not involve a specialized degree of care. *See, e.g., Talbot v. Kirkup*, No. 551986, 2000 WL 1474582, at *10 (Conn. Sup. Ct. Sept. 21, 2000) (rejecting a claim for daycare malpractice when defendant argued "a day care provider does not deliver a professional service").

In Illinois, courts have adopted an "expansive definition" of the term "professional service" which "refers to any business activity conducted by the insured which involves specialized knowledge, labor, or skill, and is predominantly mental or intellectual as opposed to physical or

manual in nature." *Rosalind Franklin University of Med. & Sci. v. Lexington Ins. Co.*, 8 N.E.3d. 20, 40, 380 Ill. Dec. 89, 109 (1st Dist. 2014) (internal citations omitted). Coverage P refers to the services described in the Business Description of the Policy – which are defined as Child Care – Residential. Defendants maintain that the allegations surround the "professional service" of providing residential day care, and that they specifically contracted for an insurance policy that covers this "professional service" and any resulting injuries.

The Court agrees with defendants that the scope of injuries may fall within Coverage P. Caring for infants and children requires a specialized level of care, and Mount Vernon was evidently aware of that when it included Coverage P in the Policy. The allegations implicate Korzun and Zaytseva's actions while in the scope of their employment. Although some allegations likely fall outside the scope of this coverage, others are a closer call. Reading any doubts regarding coverage in favor of the insured, the Court finds that there is a duty to defend under Coverage P.

In the alternative, Mount Vernon argues the Molestation or Abuse exclusion prevents any recovery under Coverage P. But because the Court finds that the allegations are not clearly limited to abuse as defined by the Policy, it is not free and clear from doubt that this exclusion applies. The complaints cover a broad scope of conduct, and the Court should not prematurely decide that the allegations are so limited to abuse as defined in the Policy. In sum, the Court denies Mount Vernon's motion for summary judgment because it has a duty to defend Jane's Child Care, Korzun, and Zatyseva under provisions other than Coverage M.

Duty to Indemnify

Mount Vernon argues that the Court should order it has no duty to indemnify Korzun or Zaytseva. Because the duty to indemnify is narrower than the duty to defend, if a Court orders that there is no duty to defend, it can also declare that there is duty to indemnify. *See Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010). But this Court has found a duty to defend Korzun

11

and Zaytseva. Because deciding whether there is a duty to indemnify would require this Court to decide issues relevant to the underlying lawsuits, the Court finds it premature to decide this issue. *Shockley*, 3 F.4th at 331. Thus, the Court denies this request.

<u>Viability of Coverage M Sublimit</u>

Mount Vernon argues that Coverage M's $25,000 sublimit applies to the case, given that the acts of various defendants (Korzun and Zaytseva) constitute one single occurrence of "child molestation and abuse" under the Policy. It points to an unpublished case from Delaware in support, which found that a similar sublimit was enforceable in a child abuse case. *United States Underwriters Ins. Co. v. The Hands of Our Future, LLC*, C.A. No. N14C-10-175 CEB, 2016 WL 4502003 (Del. Sup. Ct. Aug. 19, 2016).[5] In response, defendants filed their own summary judgment motion, arguing that this Court must find that the sublimit is unenforceable because it violates Illinois law.

An insurance policy is not enforceable if it "contradicts public policy as mandated by the Illinois legislature." *State Farm Mut. Auto. Ins. Co. v. Fisher*, 315 Ill. App. 3d 1159, 1162–63, 735 N.E.2d 747, 751 (1st Dist. 2000). According to defendants, this serves to protect members of the public—like children—who are not going to be parties to the insurance contract. *Am. Country Ins. Co. v. Wilcoxcon*, 127 Ill. 2d 230, 241, 537 N.Ed.2d 284, 290 (1989).[6] Defendants point out that residential day care businesses in Illinois are required to have a minimum $300,000 per occurrence in public liability insurance. 89 Ill. Adm. Code 407.70(l). They maintain that Jane's Child Care *thought* it was complying with the law when it purchased a policy with a $1,000,000 per occurrence limit and

---

[5] Defendants ask this Court to strike this case, and not rely on it, because it is not binding (as it is unpublished and from another jurisdiction) and the exact policy language discussed in the opinion is unknown. The Court will not strike it, but does find that the opinion is distinguishable from the case at bar. In *Hands of Our Future*, the underlying cause of action was based on daycare center employees who allegedly encouraged children to fight one another. Here, although there are certainly concerning allegations of abuse, the complaints also contain independent, plausible negligence claims. Furthermore, *Hands of our Future* does not address the at-issue policy argument. Thus, the Court does not rely on *Hands of our Future*.

[6] The Court notes that Mount Vernon maintains that public policy is actually served by sub-limits, which encourage companies to monitor employees and prevent perpetrators from passing off the harm.

signed a policy with a Residential Child Care Amendment which made clear that the Policy was written in compliance with Illinois law, including minimum insurance coverage. Thus, they argue that the $25,000 sublimit violates Illinois law. Mount Vernon contests this conclusion on several fronts.

First, Mount Vernon argues that defendants cite the wrong provision of the Illinois code. Specifically, Mount Vernon claims 89 Ill Adm. Code 407 applies to Day Care Centers, which is different from a *Group* Day Care Home like Jane's Child Care, which is governed by 89 Ill. Adm. Code 408. The parties dispute whether Jane's Child Care is a "Group Day Care Center" or a "Day Care Center." Second, Mount Vernon and defendants delve into a deep factual debate as to whether DCFS approved the Policy and its sublimits, and whether any Court action on this issue would "usurp" regulatory authority. The parties do not follow local rules when pursuing this argument as they cite directly to the record, and not their statements of fact. *See Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 664–666 (N.D. Ill. 2015) (Feinerman, J.) (collecting cases). Some of these issues are cited in the statements of fact. That notwithstanding, it is clear both arguments center upon disputed factual issues that should not be resolved at summary judgment.

Defendants point out that regardless of whether Jane's Child Care is a Group Day Care Home or a Day Care Center, the single limit minimum amount of public liability insurance required for each type of center ($100,000 and $300,000 respectively, *see* 89 Ill. Adm. Code 407(l); 89 Ill. Adm. Code 408.35(j)) exceeds the sublimits in the "Child Abuse and Molestation" provision of the Policy. Nonetheless, the Court is unconvinced that it should declare this provision void and unenforceable. Sifting through the parties' arguments, the Court notes that the parties have not pointed to authorities specific to sublimits. Indeed, the Policy's overarching limit amounts exceed the regulatory requirements. It is unclear how this sublimit would play out in practice, and if there

would indeed be any violation of law if the sublimit was enforced. As a result of the above, the Court denies defendants' summary judgment motion.

## Conclusion

For the above reasons, the Court grants in part and denies in part Mount Vernon's motion for summary judgment and denies defendants' motion for summary judgment. In its brief, Mount Vernon asked the Court to answer several questions, to which the Court answers the following: Does Mount Vernon owe a duty to defend and indemnify Jane's Child Care under Coverage M? **Yes**. Does Mount Vernon owe a duty to indemnify up to a $25,000 sublimit? **This issue is premature**. Does Mount Vernon owe a duty to defend Korzun and Zaytseva: **Yes.**

IT IS SO ORDERED.

Date: 8/24/2023

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge